## CIRCUIT COURT OF THE CITY OF WINCHESTER

H. W. Butler, Jr., et al.

v.

The City Planning Commission
of the City of Winchester and
The City of Winchester

July 20, 1977

Case No. (Chancery) 5103

By JUDGE ELLIOTT MARSHALL

While the actual controversy in this case involves the refusal of the Winchester Planning Commission to approve the petitioners' plan for subdivision which ignores and makes no provision to accommodate what is called the "Southern Loop" which, under the "Thoroughfare Plan" adopted in 1969 is an arterial highway planned to traverse the petitioner's land, the direct attack is upon a zoning ordinance (18-4) adopted in 1976, prohibiting the erection of structures within 25 feet of the arterial highway rights of way as shown on the Plan. Apparently it is conceded that if the ordinance is valid the Planning Commission may properly refuse to approve the petitioner's subdivision plan. It is agreed that the only ground upon which approval of the petitioner's plan was denied was the failure to take cognizance of the setback lines on the Thoroughfare Plan.

If it were not for the fact that the petitioners are subdividers, there could be no doubt that the ordinance, so far as it applied to them, would be

violative of their constitutional guaranties against the taking of property without due process and adequate compensation. It was so held in Bd. Sup. James City County v. Rowe, 216 Va. 128. Until and unless they decided to apply to the Planning Commission for approval of their plat ignoring that portion of the "Southern Loop" projected across their property they could use the land covered by the proposed right of way for the erection of any structures or for any purpose they saw fit, even though they might thwart the worthy design for the solution of vexatious future traffic problems of the city. The only means of prevention of such use would be the exercise of eminent domain.

Rowe carefully abstained from deciding whether or not a subdivider might be required to dedicate such a right of way as a condition precedent to approval of a subdivision plan. p. 138.

Our problem narrows, then, to whether the Citys' power to regulate the subdivision of lands within its borders, and within three miles thereof, gives it the right to withhold approval unless the subdivider's plan takes cognizance of the "Southern Loop" with its 25 foot setback lines, the obvious result of which would require the subdivider to dedicate that portion of the "Loop" to public use. Upon approval the City would acquire the right of way as provided by the statute. Code Sec. 15.1-466.

The Legislature has gone a long way in granting to the City broad powers over zoning and subdivision of lands, and very properly so. The orderly planning of its growth demands that the City regulate the size and shapes of lots, the projection of streets, the guaranty of adequate water, sewer and other facilities, etc. To some extent the good of the City as a whole as well as that of the residents of the subdivision require proper planning, which quite frequently is not in the pecuniary interest of the private owners of the subdivision.

However, the general rule seems to be that the developer "may be required to donate only that portion

of the land to be divided <u>as</u> <u>may</u> <u>be</u> <u>needed</u> <u>for</u> <u>the</u> <u>public</u> <u>uses</u> <u>that</u> <u>will</u> <u>result</u> <u>from</u> <u>the</u> <u>activities</u> <u>specifically</u> <u>and</u> <u>uniquely</u> <u>attributable</u> <u>to</u> <u>the</u> <u>proposed</u> <u>development</u>". McQuillin, Sec. 25.146a at 433, (3d Ed. Revd. Vol. 1976).

There are two articles in the University of Richmond Law Review (No. 10, p. 440, and No. 11, p. 21) which deal with the power of a municipality to impose dedication and land use restrictions on subdividers. Both analyze and apply the holding in <u>Rowe</u>.

It is the conclusion of both authors that any restrictions of the use of the property or requirements of dedication of streets or other public facilities as conditions precedent to approval of proposed subdivision plats must substantially relate to the projected needs of the proposed development; <u>ergo</u>, if the proposed dedications relate to the needs of the municipality or public as a whole, "there could be little doubt that under contemporary Virginia law, a municipality <u>cannot</u> <u>constitutionally</u> <u>transfer</u> <u>the</u> <u>costs</u> <u>of</u> <u>facilities,</u> <u>predominantly</u> <u>public</u> <u>in</u> <u>nature,</u> <u>to</u> <u>either</u> <u>a</u> <u>subdivision</u> <u>developer</u> <u>or</u> <u>to</u> <u>future</u> <u>residents</u> <u>of</u> <u>that</u> <u>subdivision</u>". 11 U of Rich. L. R. 21, 31. "It is submitted that the Supreme Court of Virginia will permit local governments to require mandatory dedications as conditions precedent to land development if the landowner is a subdivider <u>and</u> <u>the</u> <u>subdivision</u> <u>generates</u> <u>a</u> <u>need</u> <u>for</u> <u>such</u> <u>a</u> <u>public</u> <u>dedication</u>." "But, it appears from this decision (<u>Rowe</u>) that Virginia will not allow great expansion of local zoning power in controlling certain aspects of land use." 10 U. of Rich. L. R. 440, 447. (Underscoring supplied).

While the report of the case of <u>Ayers</u> v. <u>City</u> <u>of</u> <u>Los</u> <u>Angeles,</u> 34 Cal. 2d 1, 207 P. 2d 1 (1949), is not available to us, the quotations from Counsels' brief seem to indicate that a problem somewhat similar to that of the instant case was there presented. Apparently the city refused to approve the proposed subdivision unless the developer dedicated new streets and widened existing streets to conform to its general plan for the growth of the city. The Court apparently

held that the main benefit would accrue to the residents of the subdivision with incidental benefit to the rest of the city.

It could scarcely be said that the primary purpose of the "Loop" would be to benefit the residents of the subdivision. The terminology applied to the "Loop" indicates that it is intended to be "a thoroughfare"; "an arterial highway." The evidence disclosed that it is designed to "by-pass the central business district". Although it will no doubt provide some access to the subdivision the main purpose is to carry through traffic from other portions of the city across the petitioner's land. In fact it is proposed that it be a four lane limited access highway.

It is regrettable that the petitioners will be able, perhaps unreasonably and capriciously, to place an imposing obstacle in the way of the Citys' progress. If the subdivision plan is carried out the erection of structures on the proposed route of the "Loop" might render the costs of right of way prohibitive and thus multiply the City's traffic problems, but if the "Thoroughfare Plan" is to become a reality the whole of the populace of the City must pay for it. I do not believe that Ordinance 18-4 as applied to the property of the petitioners is constitutional and I will so decree.